The document below is hereby signed.

Signed: November 16, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CAMBRIDGE CAPITAL GROUP, INC., | ) ) | Case No. 03-01178 (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| _____ | ) ) | |
| WILLIAM D. WHITE, as trustee, | ) ) ) | |
| Plaintiff, | ) ) | Adversary Proceeding No. 06-10011 |
| v. | ) ) | |
| KAR SMART OF LEXINGTON, INC., a/k/a JNT, INC., *et al.*, | ) ) ) ) | **Not for Publication in West's Bankruptcy Reporter** |
| Defendants. | ) | |

MEMORANDUM DECISION AND ORDER

In this adversary proceeding, the trustee of the estate of the debtor, Cambridge Capital Group, Inc. (CCG), under chapter 7 of the Bankruptcy Code (11 U.S.C.) seeks to recover a $33,200 payment to the defendant, Kar Smart, Inc., as a fraudulent conveyance.  For the reasons explained below, the court will grant the trustee's motion for summary judgment in part, deny the

trustee's motion in part, and deny the defendant's cross-motion for summary judgment.

I

The operative facts underlying these motions for summary judgment revolve around the acquisition of a 1999 Range Rover by Nancy Cummings, the wife of Eric Cummings, the 90% shareholder of the debtor.  In or about September of 2002, the defendant listed for sale on E-bay a 1999 Land Rover Range Rover.  Mrs. Cummings placed the winning bid for the Range Rover and thereafter executed a purchase order for the vehicle.  On September 20, 2002, CCG, the debtor, issued a check in the amount of $33,200 payable to the defendant, noting in the memo line "RR 1999" and the vehicle's VIN number.  The defendant deposited the check into its account and transferred title to the car to Mrs. Cummings, who thereafter took delivery.

In June of 2003, creditors initiated an involuntary chapter 7 proceeding against the debtor.  In its schedules filed in response to the chapter 7 petition, the debtor listed $931,000 of its $16,211,015.20 in liabilities as incurred prior to 2002 (the year of the transfer) and listed assets of $17,975 as of the petition date.  The debtor's Statement of Financial Affairs also discloses that in the 12 months prior to bankruptcy there were transfers of $18,600 in bank garnishments and $200,000 in salary

2

and disbursements to Mr. Cummings.

II

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Whether any disputed issue of fact exists is for the court to determine. *Balderman v. United States Veterans Admin.*, 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F. 3d 105, 114 (2d Cir. 1998).  Moreover, not every disputed factual issue is material in light of the substantive law that governs the case.  "Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

### III

The trustee seeks to avoid the transfer pursuant to the constructive fraud provision of 11 U.S.C. § 548(a)(1)(B), arguing that because the debtor wrote a check for a vehicle that was delivered to Mrs. Cummings and because debtor's schedules lead to a "reasonable conclusion" that it was insolvent on the date of the transfer this transaction is avoidable as a fraudulent conveyance. The defendant opposes the trustee's motion on three grounds. First, the defendant contends that there is insufficient evidence to show that the money transferred from the debtor to the defendant was property of the debtor. Second, the defendant argues that the trustee is not entitled to summary judgment because the trustee has failed to establish the debtor's insolvency as of the date of transfer. Third, the defendant argues alternatively that in the event the Court were to find there were sufficient facts to establish that an interest in the debtor's property was transferred and the debtor was insolvent as of the date of transfer, the court nonetheless should deny the trustee's motion and instead find that the defendant is entitled to summary judgment because the debtor received "reasonably

equivalent value" on the transfer.

To prevail on a claim for fraudulent conveyance under § 548(a)(1)(B), the trustee has the burden of proving that within 2 years[1] prior to the filing of the bankruptcy petition there was (1) a transfer of an interest in the debtor in property; (2) that occurred when the debtor was insolvent; and (3) the debtor received "less than reasonably equivalent value in exchange" in the transfer.[2]  *Dicello v. Jenkins*, 160 B.R. 1, 10 (Bankr. D.D.C. 1993).

A.

A Transfer of an Interest of the Debtor in Property

To prevail under the constructive fraud provision of § 548(a)(1)(B), the trustee first has the burden of showing that

---

[1] In 2005 § 548 was amended to extend the fraudulent conveyance period from 1 year to 2 years.  Because the transaction at issue occurred within 1 year of the filing of the bankruptcy petition, which time period is applicable is immaterial for purposes of the present motion.

[2] Section 548 provides, in relevant part:

> The Trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>     (A) made such transfer or incurred such obligation with
>         actual intent to hinder, delay, or defraud . . . ; or
>     (B) (i) received less than a reasonably equivalent
>         value in exchange for such transfer or obligation;
>         and
>         (ii)(I) was insolvent on the date that such
>         transfer was made or such obligation was incurred
>         . . . .  11 U.S.C. § 548(a)(1).

it was an interest of the debtor in property that was transferred.  In support of this element of the test, the trustee offers a cleared check drawn from the debtor's account payable to the defendant.  In opposition to the trustee's motion, the defendant argues that the debtor was a mere conduit for the funds ultimately sent to the defendant.  In support of this argument, the defendant notes that the debtor's Schedule G filed in the underlying proceeding shows deposits in the debtor's account of $30,000 on September 20 and $29,000 on September 23, five and two days, respectively, before the car was purchased.  The debtor posits that this money could have been transferred by Mrs. Cummings for the purpose of purchasing the vehicle.  Whether money deposited into an account of the debtor by a third party for the purpose of paying that third party's creditor is an interest of the debtor in property for purposes of § 548 is an issue of first impression for this court and this circuit.  Several other circuits have, however, addressed the issue.

   The Eleventh Circuit, in *In re Chase & Sandborn, Corp.*, 813 F.2d 1177 (1987) developed the relevant test followed by all other courts addressing the issue today.  There, the court explains the public policy behind avoidance actions in bankruptcy:

> The purpose of both [preference actions and fraudulent transfers] is to prevent the debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors.

> Consequently, any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfer that diminishes that property are subject to avoidance. *Id.* at 1181.

Importantly, however, the court pointed out a "critical difference" between preferences and fraudulent conveyances regarding whether the debtor had control of the property transferred:

> Avoidable preferences arise in a situation in which it is logical to presume that the debtor in fact controlled the funds paid out: the debtor, after all, was under an existing obligation to make payment. The presumption that the debtor controlled the payment is not similarly compelling where funds provided by a third party are transferred to a noncreditor. By definition, such transfers are not effected to repay an existing obligation of the debtor. Indeed, such transfers do not provide any benefit whatsoever to the debtor. Thus, as a general matter, it is as likely that the party providing the funds would instigate the transfer as it is that the debtor would do so. *Id.*

The court then went on to conclude that the purpose of fraudulent conveyance avoidance was to preserve assets of the debtor for the benefit of all creditors and noted that "[p]resuming control from the mere fact of transfer thus begs the essential question presented by § 548 claims: Did the transfer diminish the assets of the debtor?" *Id.* Ultimately, the Eleventh Circuit concluded that "where a transfer is challenged as fraudulent, more is necessary to establish the debtor's control over the funds than the simple fact that a third party placed the funds in an account of the debtor with no express restriction on their use." *Id.*

Instead, the court stated, one must look to "the entire circumstances" of the transaction. *Id.* at 1182.

In evaluating the entire circumstances of the transaction, the *Chase & Sandborn* court weighed several factors: the amount of time the deposited money spent in the account; when the account was opened in relation to the deposits and when the account was closed; and the name under which the account was opened. *Id.* Other courts addressing the issue have found dispositive whether a check sent to the debtor was simply endorsed over to the third party's creditor, *A.W. Lawrence & Co., Inc. v. Burstein (In re A.W. Lawrence & Co.)*, 346 B.R. 51, 28 (Bankr. N.D.N.Y. 2006), or whether the deposited money was being held in trust for the third party, *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1118 (5th Cir. 1995) (addressing in the § 547 context); *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.)*, 124 B.R. 984, 995-96 (Bankr. S.D. Ohio 1990).

In support of its motion, as stated above, the trustee has presented a check, drawn on the debtor's account, for the payment of the Range Rover. The mere fact that the check was drawn from the debtor's account was sufficient to meet the trustee's initial burden under *Celotex* to show an absence of a material fact that the money transferred was an interest of the debtor in property. After the trustee made this showing, the ultimate burden of demonstrating the existence of a genuine issue of material fact

shifted to the defendant. *Celotex,* 477 U.S. at 322-23. Particularly, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some *metaphysical* doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. Proc. 56(e))(emphasis added).

Here, the defendant has come forward with no particular facts. Instead, the defendant merely "posits" that the money deposited in the debtor's account in the days prior to the transfer could have come from Mrs. Cummings or someone paying on her behalf. The defendant's suppositions are insufficient to carry its burden under the *Celotex* and *Matushita* standards.

The defendant goes on to ask the court to reopen discovery for the limited purpose of finding the source of the funds deposited in the debtor's account in the days leading up to the transfer. The defendant has had ample time to undertake discovery in this matter, and has failed to allege facts showing cause for extending the discovery deadline. The court declines the defendant's request to allow additional discovery.

B.   Insolvency

The next issue to address is whether the trustee has submitted sufficient evidence to establish the absence of material issues of disputed facts regarding the debtor's insolvency as of the transfer date.  In support of a finding of insolvency the trustee offers the debtor's schedules and statement of financial affairs filed in the underlying chapter 7 case.  The schedules show that prior to 2002, the year the car was purchased, the debtor had liabilities of $931,000 and that on the date of petition the debtor had assets valued at $17,975.  The statement of financial affairs shows that during the 12 months preceding the filing of the chapter 7 petition, the debtor had transfers of $18,600 in garnishments and $200,000 in wages to Mr. Cummings.  The defendant contends that these facts are insufficient to establish the debtor's insolvency as of the transfer date.  The court agrees.

Inferring insolvency over a period time from a proven date of insolvency has been referred to by some courts as "retrojection."  *See Briden v. Foley*, 776 F.2d 379, 382 (1st Cir. 1985).  This court, along with other courts looking at the issue of retrojection, has held that "evidence of insolvency on a date significantly distant in time from the date of the transfer, without more evidence, is insufficient to support a finding of insolvency on the date of the transfer."  *Washington*

*Bancorporation v. Hodges (In re Washington Bancorporation)*, 180 B.R. 330, 333 (Bankr. D.D.C. 1995) (*citing In re Auto-Pak, Inc.*, 55 B.R. 403, 405 (Bankr. D.D.C. 1985)).  To establish the debtor's insolvency as of the transfer date the trustee relies on the debtor's schedules and statement of financial affairs.

The schedules accompanying the debtor's chapter 7 case show that prior to 2002, nine months before the transfer at issue, the debtor had liabilities totaling $931,000 that still existed at the time of bankruptcy.  Further, schedule B lists assets valued at $18,000 as of the petition date.  Finally, the statement of financial affairs shows transfers of $218,600 within the one-year period prior to the petition date.  Taking these numbers together, the trustee contends, leaves the debtor insolvent by at least $694,400 as of the transfer date.  These numbers, however, do not provide a complete picture of the financial state of the company on the date of the transfer at issue.

The statement of financial affairs asks the debtor to disclose certain prepetition transfers—specifically, transfers that a trustee could avoid as either preferential or fraudulent.  For example, question three requires the debtor to disclose payments to all creditors within 90 days before the filing of the petition and transfers to insider creditors within one year of the date of filing.  Question ten requires the debtor to disclose transfers out of the ordinary course of business within one year

11

of the petition date.  Finally, question twenty-three requires the debtor to disclose withdrawals and distributions given to insiders within one year before the petition date.  Though detailed, these questions leave out many prepetition transactions that would provide the information necessary to retroject the debtor's insolvency as of the transfer date.

The statement of financial affairs, for example, sheds no light on ordinary course transfers in the one-year period before the petition date.  Presumably, the debtor could have had ordinary course transfers after the purchase of the Range Rover that would have rendered the company insolvent as of the petition date but that would not have affected the debtor's solvency at the date of purchase.[3]  Because the schedules and statement of financial affairs do not present a complete financial picture as of the transfer date, the court finds it impossible to retroject the debtor's insolvency based solely on this information. Consequently, the court denies the trustee's motion for summary

---

[3] The court also notes that the debtor listed revenues in the two years prior to petition of $1,200,000.  If these revenues were recognized prior to the purchase of the Range Rover, then this could also provide further evidence of the debtor's solvency.

judgment on this point.[4]

Having determined that the trustee is not entitled to summary judgment on the solvency prong of § 548(a)(1), the next issue is whether the defendant can prevail on its cross-motion. When a party moving for summary judgment on a claim does not bear the ultimate burden at trial, that party can prevail by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. To make this showing, however, the moving party must do more than conclusorily state that there is an absence of evidence. Rather, the movant must "inform[] the district court of the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting Fed.R.Civ.P. 56(c)). Although the defendant argues that there is insufficient evidence to establish the debtor's insolvency as of the transfer date, it has failed to "inform" the court of the

---

[4] The trustee also notes in its motion a suit pending in Georgia during the transfer period alleging $14 million in damages. Even assuming, for the sake of argument, that this contingent, non-liquidated claim were appropriately included as a liability of the debtor as of the transfer date, the trustee's motion still suffers from the same deficiency: the schedules and statement of financial affairs paint too incomplete a picture to determine the debtor's insolvency as of the transfer date.

basis for its motion.

In its memorandum in support of its cross motion for summary judgment, the defendant takes care to point out why the evidence the trustee relied on in its motion is insufficient to demonstrate insolvency.  The defendant does not, however, provide the court with enough information to determine that there is no evidence of insolvency elsewhere.  In making its motion for summary judgment, the trustee relied exclusively on the debtor's schedules and statement of financial affairs.  These are but two limited pieces of evidence in a fraudulent conveyance action.  To prevail on its cross motion for summary judgment the defendant must point to an absence of evidence in other areas, not just the limited scope of the schedules and statement of financial affairs.  Rather, under *Celotex*, the defendant had the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that showed an absence of evidence of the debtor's insolvency.  For these reasons the defendant's cross motion is appropriately denied.

### C.  Reasonably Equivalent Value

Having address the insolvency and interest of the debtor in property prongs of the fraudulent conveyance section, the final issue is whether the debtor received reasonably equivalent value in exchange for tendering its check to the defendant.

Section 548(d)(2) of the Bankruptcy Code defines value as "property, or satisfaction or securing of a present or antecedent debt of the debtor . . . ."  In support of an absence of value to the debtor, the trustee has presented several pieces of evidence.  First, Mrs. Cummings and the defendant were the only parties to the purchase order.  Second, CCG, the debtor, issued a check to the defendant, noting in the memo line that the check was for a "1999 Range Rover" and the car's VIN.  Third, the schedules accompanying the debtor's chapter 7 filing do not list the Range Rover as an asset.  Finally, the trustee noted that Mrs. Cummings took title to and possession of the Range Rover.  At first look, these uncontroverted facts establish that the debtor paid for a car that Mrs. Cummings owned and, therefore, no reasonably equivalent value was exchanged for the check.  These facts are not in dispute and the defendant does not contend there are any other facts outstanding.  The defendant, however, relying exclusively on *Plotkin v. Pomona Valley Imports, Inc.*, 199 B.R. 709 (9th Cir. BAP 1996), contends that the debtor received a brief property interest in the Range Rover that should constitute value for the purposes of § 548.

In *Plotkin*, the debtor created a Ponzi scheme whereby he offered to purchase luxury cars for prospective purchasers at a wholesale price.  *Id.* at 712.  In a typical transaction the debtor would take $80,000 from several purchasers and buy as many

15

cars as he could at the sticker price, $114,500. *Id.* After he signed the sales contract, the debtor would then direct the dealer to deliver and title the car to specific, "lucky" prospective buyers. *Id.* at 712–13. Because the debtor was paying $34,500 more for each car than he collected from each prospective purchaser, other purchasers' money was used to make up the shortfall until the scheme collapsed. *Id.* at 713.

In *Plotkin*, the Ninth Circuit Bankruptcy Panel found that the transfers were not avoidable because the debtor qualified for the safe harbor under § 548(c), which provides that a transferee who takes in good faith and for value can retain the transferred property notwithstanding the transaction's otherwise fraudulent status. *Id.* at 720. Integral to the court's finding was that the debtor had received value (i.e., property) in the transaction. *Id.* Particularly, the court found that although the debtor never received legal title to the cars, he did receive equitable title. *Id.* at 714.

The *Plotkin* court went on to explain that the dominion and control test informed its analysis. *Id.* at 715. The dominion and control test "determines who is a transferee and requires, at a minimum, dominion over the money or other asset, the right to put the money [or asset] to one's own purposes such as to invest in lottery tickets or uranium stock." *Id.* (*citing Danning v. Miller*, 922 F.2s 544 548–49 (9th Cir. 1991)) (internal quotations

16

omitted) (alterations in original). Based on this reasoning, the *Plotkin* court found that the debtor was "plainly the dealers' transferee of the vehicles. He had the exclusive power to designate the persons to whom the vehicles would be delivered." *Id.* The present case is distinguishable from *Plotkin*.

The debtor in *Plotkin* was a contractual party to the transaction: He entered into sales agreements with the dealers for the purchase of the automobiles. *Id.* at 712. It was this contract that gave the *Plotkin* debtor the right to direct the disposition and delivery of the cars. This right to direct via the contract was the debtor's property interest, and therefore value, for purposes of § 548. Here, the only party to the contract was Mrs. Cummings: Mrs. Cummings won the auction on E-Bay and Mrs. Cummings was the only party to the purchase order. CCG had no right to direct any disposition or delivery of the Range Rover. Presumably, if CCG had attempted to direct disposition or delivery, Kar Smart would have been liable to Mrs. Cummings for a breach of contract because CCG was neither her agent nor had any rights under the contract.[5] The mere payment

---

[5] The defendant here makes a point of noting that it made delivery of the car in accordance with the instructions of Eric Cummings, the 90% owner of CCG and Mrs. Cummings husband. However, Kar Smart makes no allegations that in so directing Mr. Cummings was acting as an agent for CCG. And, in any event, even if Mr. Cummings were acting as an agent for CCG he had no power greater than that of CCG, which, as stated previously, had no power at all as it was not a party to the contract.

of money by the debtor for the benefit of a third party without a supporting contract giving the debtor some rights in the property (e.g., to direct its ultimate disposition or delivery) is insufficient, as a matter of law, to establish value for the purposes of § 548.  For these reasons *Plotkin* does not provide a sound basis on which to contest the trustee's motion for summary judgment.  Accordingly, the court finds the trustee has established that there was no reasonably equivalent value to the debtor on the transaction.

IV

Having determined that the transfer from the debtor to the defendant is a fraudulent conveyance under § 548(a)(1)(B), the next issue to address is whether the defendant is a entity from which the trustee can recover.  Section 550(a) empowers the trustee to recover any transfer avoided under § 548 from either the initial transferee or the immediate or mediate transferee of the initial transferee.  11 U.S.C. § 550(a).  Section 550(b), however, excepts from the reach of § 550(a) any immediate or mediate transferee of the initial transferee who takes for value, in good faith, and without knowledge of the avoidable nature of the transfer.  *Id.* § 550(b).

In support of its contention that the defendant was a transferee for purposes of § 550, the trustee presents a check

written from the debtor to the defendant.  In opposition, the defendant contends that it is not an initial transferee and therefore eligible for the § 550(b) safe harbor.  In its motion in opposition the defendant asserts, based on its supposition that the money deposited in the days leading up to the transfer came from Mrs. Cummings or a party paying on her behalf, that the defendant is an immediate transferee of the debtor in good faith and for value and, therefore, eligible for the § 550(b) safeharbor.  Even assuming, for the sake of argument, that the defendant's supposition is true, the defendant still does not qualify for the § 550(b) safeharbor.

Section 550(b) precludes the Trustee from recovering from a good faith immediate or mediate transferee of the initial transferee *of the debtor*.  *See* 11 U.S.C. § 550 (allowing the Trustee to recover to the extent a transfer is avoided under § 548, which has a scope limited to transfers of property from the debtor).  Here, the defendant is arguing that the debtor was the initial transferee and the defendant was its immediate good faith transferee for value.  This, however, would only provide relief if Mrs. Cummings were the debtor.  Because CCG is the debtor, however, § 550(b) provides no relief to the defendant.

V

The trustee has made a sufficient showing for summary judgment on the issues of whether an interest of the debtor in property was transferred and whether the debtor failed to receive reasonably equivalent value in the exchange. Regarding the interest of the debtor in property, the defendant's suppositions are insufficient under *Celotex* and *Matsushita* to overcome the trustee's motion. Further, regarding the reasonably equivalent value prong, the court finds *Plotkin* distinguishable from the present case on the basis of no underlying contract between the debtor and the defendant providing some value to the debtor. On the issue of insolvency, however, both the trustee's and the defendant's showing is insufficient to entitled either to summary judgment. Finally, the court finds the defendant's reliance on § 550(b)'s safeharbor misplaced: Mrs. Cummings is not the debtor in this case and, therefore, CCG is not an initial transferee and the defendant its immediate transferee. Accordingly, it is

ORDERED that the trustee's motion for summary judgment is granted in part and denied in part as set forth above, and that the defendant's motion for summary judgment is denied.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.