The document below is hereby signed.

Signed: September 14, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re  ) | | |
| ) | | |
| CAMBRIDGE CAPITAL GROUP,  ) | Case No. 03-01178 | |
| INC.,                     ) | (Chapter 7) | |
| ) | | |
|         Debtor.  ) | | |
| _____  ) | | |
| ) | | |
| WILLIAM D. WHITE, as  ) | | |
| trustee,              ) | | |
| ) | | |
|         Plaintiff,  ) | Adversary Proceeding No. | |
| ) | 06-10011 | |
|     v.  ) | | |
| ) | **Not for Publication in** | |
| KAR SMART OF LEXINGTON,    ) | **West's Bankruptcy Reporter** | |
| INC., a/k/a JNT, INC., *et*  ) | | |
| *al*.,                       ) | | |
| ) | | |
|         Defendants.  ) | | |

MEMORANDUM DECISION RE TRUSTEE'S RENEWED MOTION
<u>FOR SUMMARY JUDGMENT AGAINST KAR SMART OF LEXINGTON</u>

    This addresses the trustee's Renewed Motion for Summary Judgment.  For the reasons that follow, I will deny the motion.

I

On January 25, 2006, the trustee commenced the above-captioned adversary proceeding seeking to recover from Kar Smart of Lexington, Inc., $33,200 as a fraudulent conveyance under § 548 of the Bankruptcy Code.  On March 31, 2009, the trustee filed a motion for summary judgment, to which Kar Smart timely filed in response and filed a cross-motion for summary judgment. In a memorandum decision and order entered November 16, 2009, I denied Kar Smart's cross motion and granted in part and denied in part the trustee's motion for summary judgment, leaving open the sole issue of the debtor's insolvency on the transfer date.  In my November 16, 2009, decision and order, I denied the trustee's motion for summary judgment on the issue of insolvency because I found that the trustee had provided the court with insufficient evidence to retroject the debtor's solvency on the transfer date. The trustee has now filed a renewed motion for summary judgment addressing this sole remaining issue.

II

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view

2

the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Whether any disputed issue of fact exists is for the court to determine. *Balderman v. United States Veterans Admin.*, 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F. 3d 105, 114 (2d Cir. 1998).  Moreover, not every disputed factual issue is material in light of the substantive law that governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

III

To prove the debtor's insolvency on the date of transfer, the trustee relies on the debtor's schedules, statement of financial affairs, bank statements, and outstanding judgments and

tax liens.  I turn first to the debtor's liabilities on the transfer date.

In his renewed motion for summary judgment, the trustee presents evidence that the debtor had liabilities totaling at least $14,454,899.58 on September 25, 2002, the date Kar Smart cashed the check.  These liabilities consisted of $172,401.30 in outstanding judgments,[1] $57,665.62 in tax liens,[2] a $15,000.00

---

[1] The judgments outstanding as of the transfer date were as follows:
- $38,737.50; *Airliner Innkeepers, Ltd. v. Cambridge Capital Group, Inc.*, Case No. 01-018740 (02) (Fla. Cir. Ct. Jan 3, 2002);
- $99,237.50; *Atlantic Point, Inc. v. Cambridge Capital Group, Inc.*, Case No. 07-018739 (02) (Fla. Cir. Ct. Jan. 3, 2002);
- $3,408.25; *Travel Game v. Cambridge Capital*, 2001 SCB 014317 (D.C. Super. Ct. Jan 28, 2002);
- $6,000.00; *Another Time Inc. v. Cambridge Capital Group, Inc.*, GV02001090-00 (Va. Gen. Dist. Ct. June 17, 2002);
- $10,000.00; *All Pro Auto Body Inc. v. Cambridge Capital Group, Inc.*, No. 72 CV-218636V (Md. Cir. Ct. June 27, 2002);
- $15,018.05; *Porter Wright Morris & Arthur, LLP v. Cambridge Capital Group*, 2002 CA 000092 B (D.C. Super. Ct. Sept. 9, 2002).

[2] The tax liens outstanding as of the transfer date were as follows:
- $9,663.25; *State of Maryland v. Cambridge Capital Group, Inc.*, No. 1 CV-218502V (Md. Cir. Ct. Feb. 9, 2001);
- $40,320.10; *State of Maryland v. Cambridge Capital Group, Inc.*, No. 1 CV-224679V (Md. Cir. Ct. Aug. 31, 2001);
- $7,682.27; District of Columbia Dept. of Employee Servs., D.C. Recorder of Deeds, Doc. No. 2002066338 (June 6, 2002).

settlement,[3] and a claim for $14,300,832.66 for which a default judgment was later entered against the debtor.[4]

To establish the debtor's assets on the transfer date, the trustee relies on the debtor's bank statements from September 2002, and the debtor's Schedule B and Statement of Financial Affairs.  Three of the debtor's bank statements from September 2002 show a cash balance of $59,964.74 on September 25, 2002.[5] Importantly, though, the trustee provides no account statements from the SunTrust Bank checking account, an account which the Statement of Financial Affairs reflects was not closed until December 2002.  Second, The debtor's Schedule B reflects assets on June 17, 2003, the petition date, of $17,975.  Finally, the trustee contends that the debtor's Statement of Financial Affairs shows no transfers of assets of the debtor other than $18,600 in garnishments in the year prior to the petition date, a period that covers the transfer in question.  Taking the debtor's Schedule B and Statement of Financial Affairs together, the trustee argues, the debtor could have had no more than $18,000 in

---

[3] *Resources for Senior Living, LLC v. Cambridge Capital Group, Inc.*, No. 64 01-CVS-18819 (N.C. Super. Ct. Mar. 18, 2003) (settlement date Sept. 16, 2002).

[4] *Reddock v. Rando Group, Inc.*, 02V-0278 (Ga. Super. Ct. Mar. 25, 2003) (suit commenced Mar. 28, 2002).

[5] The balances were as follows:
- BB&T: $50,550;
- The Business Bank: $ 9,345.11;
- Chevy Chase Bank: $69.63.

assets in September 2002.  This raises a few issues.

First, by the trustee's own evidence, the debtor would have had at least $77,939.74 ($59,964.74 + $17,975) on the transfer date, not $18,000.  Second, the statement of financial affairs shows more transfers than $18,600 in garnishments: Question 5 shows a repossession of a postage machine valued at $3,000; Question 23 shows a transfer of $200,000 for "salary/bonus" to Eric Cummings, the debtor's president.  If these transfers happened after the debtor paid Kar Smart for the car, the debtor could have had assets on hand of $262,964.74 ($200,000 + $3,000 + $59,964.74) on the transfer date.  Likewise, if the garnishments occurred after the transfer date, then the $18,600 garnished amount too would need to be added in.  Third, as I explained in my decision granting in part and denying in part the trustee's original motion for summary judgment, the Statement of Financial Affairs does not reveal all transfers of the debtor in the year prior to bankruptcy.  Importantly, the Statement does not reveal any information about payments to non-insider creditors prior to 90 days before the petition date and does not reveal ordinary course transfers in the year prior to bankruptcy.[6]  The lack of

---

[6]   Question 3a only asks the debtor to reveal payments within 90 days of the petition and Question 3b only asks the debtor to disclose payments made within one year of the petition date "to or for the benefit of creditors who are or were insiders."  Moreover, Question 10 only asks the debtor to disclose property transferred, "other than property transferred in the ordinary course of the business or financial affairs of

evidence on payments to non-insider creditors prior to 90 days before the petition date is not problematic because any such payments would offset an identical liability and, consequently, have no effect on the debtor's insolvency.  Ordinary course transfers, however, are problematic.

By way of example, in the month after the payment to Kar Smart, the debtor could have initiated a $20 million advertising campaign.  This might have been an ordinary course transfer and, accordingly, would not have been disclosed in the statement of financial affairs.[7]  Likewise, the statement of financial affairs would fail to disclose travel expenses, wages paid to non-insider employees, and inventory sales.  These possibilities coupled with

---

the debtor," in the year prior to bankruptcy.  Nowhere does the Statement of Financial Affairs require the debtor to disclose payments to non-insider creditors outside of 90 days prior to the petition, nor does the Statement require the debtor to disclose ordinary course transfers.

[7]   I note that the debtor typed, unprompted, in the Statement of Financial Affairs that "The Debtor has not been in business for over the past approximately 14 months."  Were this 14-month period to cover September 2002, the ordinary course transfer issue would disappear because, by definition, there can be no ordinary course transfers when the debtor is not doing any business.  The problem here, however, is that the statement is not attached to any question and it is unclear to what period the statement relates.  Although the petition date was June 17, 2003, the Statement of Financial affairs was not filed until March 17, 2004.  If the fourteen months ran from the date of the Statement's filing, then the 14-month period would not reach back to September 2002.  The trustee has not provided any evidence of when the debtor ceased operating and, drawing all reasonable inferences in favor of the non-moving party, I cannot find that the Statement of Financial Affairs is determinative of the issue.

the absence of records from the SunTrust account and other evidence establishing the financial condition of the debtor--e.g., the debtor's financial records or an affidavit of an officer of the debtor--lead me to once again find that the trustee's evidence as to the debtor's assets on transfer date is insufficient.

### III

Because the trustee has failed to produce sufficient evidence to determine the debtor's assets on the date of the transfer, the court cannot determine whether this transaction can be avoided as a fraudulent conveyance under § 548(a)(1)(B) of the Bankruptcy Code. Accordingly, the trustee's renewed motion for summary judgment must be denied.

A separate order follows.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.